KATHRYN ROSEN
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: 206.622.3150
Email:  kathrynrosen@dwt.com

PAULA LEHMANN
Davis Wright Tremaine LLP
929 108th Avenue NE, Ste. 1500
Bellevue, WA  98004
Telephone:  425-646-6100
Email:  paulalehmann@dwt.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREA KANE, M.D.; BROOK LANG, M.D.; AND CHRISTOPHER RABIN, D.O., | No. 2:22-cv-00159-TOR |
| Plaintiffs, | **DEFENDANT PROVIDENCE HEALTH & SERVICES— WASHINGTON'S MOTION TO DISMISS** |
| v. | ORAL ARGUMENT REQUESTED |
| MEDNAX SERVICES, INC., a foreign corporation; PEDIATRIX MEDICAL GROUP OF WASHINGTON, INC., P.S. a Washington professional services corporation; and PROVIDENCE HEALTH & SERVICES— WASHINGTON d/b/a PROVIDENCE SACRED HEART MEDICAL CENTER, | |
| Defendant. | |

DEFENDANT PROVIDENCE'S MOTION TO DISMISS
Case No. 2:22-cv-00159-TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

# TABLE OF CONTENTS

2

**Page**

3

I.     INTRODUCTION.................................................................................. 1

II.    FACTS ................................................................................................. 2

4

     A.     Plaintiffs were hired and controlled by Pediatrix, which is owned

5

           by Mednax. ............................................................................. 2

6

     B.     Plaintiffs were not employed or controlled by Sacred Heart. .............. 3

7

     C.     Plaintiffs allege their Medical Director—a Pediatrix employee—
           mistreated them and engaged in unsafe medical practices. ................. 4

8

     D.     Plaintiffs resigned after, they allege, no action was taken to

9

           control Dr. Ilg and where Pediatrix implicitly approved his
           conduct. ................................................................................. 6

10

III.    ARGUMENT AND AUTHORITY ................................................................. 7

11

     A.     Sacred Heart was not Plaintiffs' employer for purposes of their

12

           common law wrongful discharge claim. .............................................. 9

13

     B.     Sacred Heart was not Plaintiffs' employer under the expanded
           definition of employer under the WLAD. ........................................... 10

14

     C.     Sacred Heart was not a joint employer with Pediatrix under the
           facts as alleged. .................................................................................. 11

15

     D.     Even if Plaintiffs could demonstrate an employment relationship,

16

           they do not state a WLAD against Sacred Heart. ............................... 15

17

     E.     Plaintiffs' Negligence and Negligent Infliction of Emotional
           Distress claims against Sacred Heart should be dismissed. ............... 17

18

IV.   CONCLUSION ........................................................................................... 19

19

20

21

22

23

DEFENDANT PROVIDENCE'S MOTION TO DISMISS
Case No. 2:22-cv-00159-TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................................7, 8

*Blantz v. California Dep't. of Corr.*,
727 F.3d 917 (9th Cir. 2013) ............................................................................8

*Cilecek v. Inova Health Sys. Servs.*,
115 F.3d 256 (4th Cir. 1997) ..........................................................................14

*De Los Reyes v. Sw. Gas Corp.*,
319 Fed. Appx. 639 (9th Cir. 2009) ..................................................................8

*Henry v. Adventist Health Castle Med. Ctr.*,
970 F.3d 1126 (9th Cir. 2020) ...........................................................12, 13, 14

*Owa v. Fred Meyer Stores*,
No. 2:16-CV-01236-RAJ, 2017 WL 897808 (W.D. Wash. Mar. 7,
2017) ................................................................................................................10

*Perry v. Pediatric Inpatient Critical Care Servs., P.A.*,
No. SA-18-CV-404-XR, 2020 WL 1248263 (W.D. Tex. Mar. 16,
2020), *aff'd sub nom. Perry v. VHS San Antonio Partners, L.L.C.*,
990 F.3d 918 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 563, 211 L.
Ed. 2d 351 (2021) ...........................................................................................14

*Reigel v. Kaiser Found. Health Plan, Inc.*,
859 F. Supp. 963 (E.D.N.C. 1994) .................................................................11

*Rhodes v. Sutter Health*,
949 F. Supp. 2d 997 (E.D. Cal. 2013) ............................................................14

*U.S. Equal Emp't Opportunity Comm'n v. Glob. Horizons, Inc.*,
915 F.3d 631 (9th Cir. 2019) ..........................................................................12

DEFENDANT PROVIDENCE'S MOTION TO DISMISS
Case No. 2:22-cv-00159-TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Vasquez v. L.A. Cnty.*,
   487 F.3d 1246 (9th Cir. 2007) ................................................................8

**State Cases**

*Anfinson v. FedEx Ground Package Sys., Inc.*,
   159 Wn. App. 35, 244 P.3d 32 (2010) ...................................................12

*Awana v. Port of Seattle*,
   121 Wn. App. 429, 89 P.3d 291 (2004) ..................................................9

*Buhr v. Stewart Title of Spokane, LLC*,
   176 Wn. App. 28, 308 P.3d 712 (2013) .....................................9, 10, 11

*DeWater v. State*,
   130 Wn.2d 128, 921 P.2d 1059 (1996) ..................................................10

*Francom v. Costco Wholesale Corp.*,
   98 Wn. App. 845, 991 P.2d 1182 (2000) ...............................................16

*Hunsley v. Giard*,
   87 Wash.2d 424, 553 P.2d 1096 (1976) .................................................17

*Niece v. Elmview Grp. Home*,
   131 Wn.2d 39, 929 P.2d 420 (1997) .......................................................17

*Snyder v. Med. Serv. Corp. of E. Washington*,
   145 Wn. 2d 233, 35 P.3d 1158 (2001) ..................................................18

*Specialty Asphalt & Constr., LLC v. Lincoln Cnty.*,
   191 Wn. 2d 182, 421 P.3d 925 (2018) ..................................................15

**State Statutes**

RCW 49.60.040(10) .......................................................................................10

WASH. PRAC., TORT LAW .............................................................................9

**Rules**

Fed. R. Civ. P. 8 ..............................................................................................7

Fed. R. Civ. P. 8(a)(2) ....................................................................................7

DEFENDANT PROVIDENCE'S MOTION TO DISMISS
Case No. 2:22-cv-00159-TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Fed. R. Civ. P. 12(b)(6) ........................................................................................7

**Other Authorities**

https://wcaap.org/michael-barsotti-md-faap/ ........................................................4

https://www.linkedin.com/in/michael-barsotti-a858181b0/ ...................................4

DEFENDANT PROVIDENCE'S MOTION TO DISMISS
Case No. 2:22-cv-00159-TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

## I.    INTRODUCTION

2      This case relates to nine employment claims brought by three physicians

3 against three defendants.  Two of the defendants, Mednax and its subsidiary

4 Pediatrix, employed plaintiffs.  The third defendant, Providence Health and

5 Services—Washington operates Providence Sacred Heart Medical Center ("Sacred

6 Heart"), the hospital where the physicians provided neonatal intensive care services.

7 Because Sacred Heart was not the employer, and there are insufficient allegations of

8 joint employment or negligence, all five claims alleged against Sacred Heart are

9 deficient as a matter of law and should be dismissed with prejudice.

10      In brief, the complaint alleges that Pediatrix hired plaintiffs and controlled the

11 terms of their employment, including their pay.  Pediatrix also hired and controlled

12 the terms of employment of the Pediatrix Medical Director, Dr. Ronald Ilg.  Dr. Ilg,

13 in turn, oversaw the day-to-day work of the plaintiffs.  Plaintiffs claim their work

14 environment as physicians was permeated with sexism, that there was a double-

15 standard for male and female doctors, and that female doctors experienced sexual

16 harassment.  They also allege they raised concerns about inequitable distribution of

17 shifts, extreme working hours, gender-based pay disparities, and patient safety

18 issues, and that they were retaliated against as a result.  The individual they claim

19 discriminated and retaliated against them is their Medical Director, Pediatrix

20 employee Dr. Ronald Ilg.

21      Based on these assertions, plaintiffs claim, as to all defendants, Wrongful

22 Discharge in Violation of Public Policy, discrimination under the Washington Law

23

DEFENDANT PROVIDENCE'S MOTION TO DISMISS - 1
Case No. 2:22-cv-00159-TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Against Discrimination ("WLAD"), retaliation under the WLAD, Negligence, and Negligent Infliction of Emotional Distress.  Plaintiffs also assert claims for violation of the Washington and federal equal pay laws against only Mednax and Pediatrix.

Plaintiffs' claims against Sacred Heart all fail on the face of the Complaint. First, by plaintiffs' own admission, Sacred Heart was not their employer under any applicable test. It simply did not exercise sufficient control over plaintiffs' employment to be their employer under common law, as required for a wrongful discharge claim.  Nor does Sacred Heart's provision of facilities and ancillary staffing to support the physicians' work create a direct or joint employment relationship under the WLAD.  Finally, even if plaintiffs did allege facts sufficient to support a finding of an employment relationship, they nevertheless fail to state a claim against Sacred Heart because the events that give rise to plaintiffs' claims— alleged disparities in pay, scheduling issues, and harassing and retaliatory remarks by their Medical Director—were all outside of Sacred Heart's control and cannot be attributed to Sacred Heart.  Because plaintiffs' discrimination, retaliation, and negligence-based theories all fail to state a claim upon which relief may be granted., Sacred Heart respectfully requests that the Court dismiss all claims against it on the pleadings, with prejudice.

## II.    FACTS

### A.    Plaintiffs were hired and controlled by Pediatrix, which is owned by Mednax.

Plaintiffs are all physicians specializing in pediatrics and neonatology-perinatal medicine.  Complaint at ¶¶2.15-2.18.  They were hired by Defendant

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1 Mednax to "treat patients at Spokane-area facilities." *Id.* Mednax is a private

2 corporation that owns and operates physician groups in 41 states. *Id.* at ¶2.1.

3 Among these physician groups is Pediatrix. *Id.* Mednax, through these physician

4 groups, provides "specialized physician services, specifically newborn, maternal-

5 fetal, and other pediatric subspecialist care, to 1,200 medical facilities nationwide,"

6 including Sacred Heart. *Id.* at ¶2.2. According to plaintiffs, Mednax's business

7 involves "control over the day-to-day work of physicians employed by Mednax and

8 its affiliated physician practice groups." *Id.* at ¶2.4. *See also id.* at ¶2.5 (stating that

9 such control over "physicians' medical decisions" is "a key component in

10 [Mednax's] profitability.").

11      Mednax also controls the day-to-day operations of its physician groups,

12 including Pediatrix: "Mednax retains the power to hire and fire Pediatrix

13 employees, control their schedules, determine their compensation, and formulate

14 physician employment agreements." *Id.* at ¶2.6. Mednax also employed a Medical

15 Director to oversee the physicians. *Id.* at ¶2.12. In this case, Mednax hired

16 Dr. Ronald Ilg for the position of Medical Director of Pediatrix. *Id.*

17      **B.     Plaintiffs were not employed or controlled by Sacred Heart.**

18      As to Sacred Heart, plaintiffs merely assert that it made decisions as to which

19 physicians could receive and maintain medical privileges (something it is required

20 to do for all physicians who provide medical services on site whether employed or

21 not); decided which Pediatrix physician would serve as the NICU Medical Director

22 (which is inconsistent with their allegation that Mednax hired for that position, *see*

23

DEFENDANT PROVIDENCE'S MOTION TO DISMISS - 3
Case No. 2:22-cv-00159-TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  *id.* at ¶2.12);  and "provided the nurses, technology, equipment, and other staffing"

2  the physicians needed to do their work.  *Id.* at ¶2.10.  Plaintiffs also vaguely assert

3  that Sacred Heart "controlled many aspects of the workplace," although the sole

4  example they allege is that it controlled "which persons could be on premises while

5  Mednax physicians were working."  *Id.*  Finally, plaintiffs assert that Sacred Heart

6  hired a former Mednax/Pediatrix employee, Dr. Michael Barsotti, as its Medical

7  Director and state that "[i]n this position, Dr. Barsotti (*and Mednax*) exerted

8  considerable control over Pediatrix-employed physicians that Mednax placed at

9  Sacred Heart."  *Id.* at ¶2.9 (emphasis added).[1]

10
11
>   **C.**   **Plaintiffs allege their Medical Director—a Pediatrix employee—mistreated them and engaged in unsafe medical practices.**

12      Plaintiffs assert that Mednax Medical Director Dr. Ronal Ilg "controlled all

13  three physicians' employment and their day-to-day work."  Complaint at ¶2.18.

14  They claim that their work environment was "permeated with sexism, in which a

15  double-standard existed for female physicians when compared to their male

16  counterparts."  *Id.* at ¶2.21.

17      Although the Complaint is light on details regarding these allegations,

18  plaintiffs cite one occasion on which Plaintiff Dr. Lang raised a concern to Dr. Ilg

19  that she had worked for six weeks without a day off, in response to which Dr. Ilg

20  reportedly told Dr. Lang to bring a picture of her daughter to work "because you're

21  ---

[1] This allegation confusingly suggests that Dr. Barsotti's placement actually

22  accentuated *Mednax's* influence over the Pediatrix physicians, not Sacred Heart's.
    In fact, Dr. Barsotti was not hired directly from Mednax but had left Mednax three

23  years before being hired by Sacred Heart. *See* https://www.linkedin.com/in/michael-barsotti-a858181b0/ and https://wcaap.org/michael-barsotti-md-faap/.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

going to work so much, you'll forget what she even looks like." *Id.* at ¶2.23.
Plaintiffs also allege Dr. Ilg told female physicians to "stop 'behaving like little girls'" and told them a woman could not be "both a mother and a doctor." *Id.* at ¶ 2.26. Plaintiffs contend that Dr. Ilg's leadership led to Mednax paying female doctors less for equal work. *Id.* at ¶ 2.27.

Plaintiffs also claim they complained about Dr. Ilg's patient care. Specifically, they claim they complained about him "not responding to call or accurately documenting patient care" and failing to report to the hospital when scheduled, including for a complicated twin delivery. *Id.* at ¶2.29-2.30. Plaintiffs further state they complained about Dr. Ilg taking too many shifts at other hospitals and being unavailable for call or to assist with patient needs. *Id.* at ¶2.32.

Plaintiffs state in conclusory terms that they complained on various occasions about these conditions "to Defendants," but they do not identify the individuals they spoke to, what they specifically complained of, who made the complaint, or when these interactions occurred. *See* Complaint at ¶2.22 (alleging plaintiffs "raised concerns about inequitable distribution of shifts, extreme working hours, and gender-based pay disparity."); *see also id* at ¶2.28, 2.31, 2.34, 2.44. Plaintiffs' only specific reference to Sacred Heart's response to such a complaint is their contention that they complained to "Providence Medical Director Dr. Barsotti," who "told Plaintiffs to stop including him on emails raising concerns." *Id.* at ¶2.35.

Although they allege "Defendants" did not take effective remedial action, plaintiffs do not assert that Sacred Heart had the ability to change any aspect of the

DEFENDANT PROVIDENCE'S MOTION TO DISMISS - 5
Case No. 2:22-cv-00159-TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    conditions about which they were complaining.  *Id.* at 2.36.  Nor do their allegations

2    support such a finding, as plaintiffs expressly affirm that Mednax, Pediatrix, and Dr.

3    Ilg controlled their schedules, their pay, and their day-to-day work.

### D.    Plaintiffs resigned after, they allege, no action was taken to control Dr. Ilg and where Pediatrix implicitly approved his conduct.

6        Plaintiffs contend that Dr. Ilg learned of their complaints and began to

7    retaliate against them.  Specifically, they allege Dr. Ilg told Dr. Lang, "the squeaky

8    wheel gets fired," told Plaintiff Dr. Kane to stop raising concerns or that it "would

9    be a problem for her," and told Plaintiff Dr. Rabin that he was "a disease in the

10   group."  *Id.* at ¶¶2.39- 2.41.  They assert that Dr. Ilg said, "someone who threatens

11   my livelihood is threatening my family and I will take any measure to stop them"

12   and that he bragged about carrying a firearm to work.  *Id.* at ¶¶2.42-43.  They also

13   claim Sacred Heart failed to enforce its policy prohibiting firearms in the facility.

14   *Id.* at ¶2.45.

15       Although plaintiffs' Complaint is again light on details regarding defendants'

16   alleged response to their complaints, they do describe one Mednax meeting that

17   occurred in 2019.  They allege that Dr. Ilg publicly berated plaintiffs and other

18   physicians who had complained about him.  *Id.* at ¶2.46.  They claim that a Mednax

19   executive, after hearing Dr. Ilg speak, commented that Dr. Ilg was an "excellent

20   leader" and had done wonderful things for the group.  *Id.* at ¶2.46.

21       Plaintiffs claim that, after this meeting, they were "so frightened about their

22   own and patient safety that they attempted to locate new employment."  *Id.* at ¶2.47.

23   They assert that Mednax's noncompete agreements prevented them from obtaining

DEFENDANT PROVIDENCE'S MOTION TO DISMISS - 6
Case No. 2:22-cv-00159-TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   alternate employment and also that "Dr. Ilg and others at Mednax" blocked

2   Dr. Rabin from obtaining a desired transfer. *Id.* at ¶¶2.48-50.[2]  Dr. Kane also

3   alleges that Dr. Ilg retaliated against her through his actions related to a NICU

4   patient. *Id.* at ¶2.51.  Drs. Kane and Lang assert no further specific allegations of

5   retaliation before their conclusory assertions that they were each constructively

6   discharged. *Id.* at ¶2.52-53 (citing intolerable treatment and fear as factors

7   motivating plaintiffs' decisions to resign).  As to Dr. Rabin, he contends that, in

8   addition to his safety concern, he resigned because "Mednax had cut his pay in

9   response to his raising discrimination and safety concerns." *Id.* at ¶2.54.[3]

10   ## III.    ARGUMENT AND AUTHORITY

11   A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a

12   complaint.  The plaintiff must present "a short and plain statement of the claim

13   showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8

14   requires that a complaint's allegations give the defendant fair notice of the claim

15   and the "grounds" on which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

16   555, 127 S. Ct. 1955 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of

17   his 'entitle[ment] to relief' requires more than labels and conclusions, and a

18   

---

19   [2] Plaintiffs were hired based on a written employment agreement that includes noncompete agreements.  They have not chosen to include the employment

20   agreements with their pleading, undoubtedly because they underscore that their employer was not Sacred Heart.

21   [3] Plaintiffs also assert that, after their resignations, Sacred Heart allegedly fired one or more Sacred Heart employees who had raised issues about Dr. Ilg and then

22   promoted Dr. Barsotti.  Complaint at ¶2.55-56.  These side issues are not germane to the issue of whether plaintiffs' allegations related to their own experiences are

23   sufficient to state a claim.

DEFENDANT PROVIDENCE'S MOTION TO DISMISS - 7
Case No. 2:22-cv-00159-TOR

1  formulaic recitation of the elements of a cause of action will not do." *Id.* (citing

2  *Conley v. Gibson*, 355 U.S. 41, 46-47 (1957)).  A plaintiff must allege enough facts

3  to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S.

4  662, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 570.

5          Although the Court must accept as true the complaint's well-pleaded facts,

6  conclusory legal allegations and unwarranted inferences cannot defeat a motion to

7  dismiss.  *See Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  "[T]he

8  Federal Rules do not require courts to credit a complaint's conclusory statements

9  without reference to its factual context." *Iqbal*, 556 U.S. at 686.  "A complaint will

10 not survive a motion to dismiss if it 'tenders naked assertions devoid of further

11 factual enhancement.'" *Blantz v. California Dep't. of Corr.*, 727 F.3d 917, 927 (9th

12 Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  When the allegations fail to state a

13 claim, "this basic deficiency should … be exposed at the point of minimum

14 expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at

15 558 (citation omitted).[4]

16          Here, plaintiffs' claims are facially insufficient as to Sacred Heart because

17 Sacred Heart, by plaintiffs' own admission, was not their employer.  Sacred Heart

18 operated the facility out of which plaintiffs performed their work.  It did not have

19 the ability to hire, fire, or otherwise control the terms or conditions of their

20 employment.  The concerns plaintiffs raised—pay disparities, scheduling issues,

21 and alleged mistreatment by their Medical Director—were not within Sacred

22 _____

23 [4] These pleading standards apply to state law claims asserted in federal court.  *See, e.g.*, *De Los Reyes v. Sw. Gas Corp.*, 319 Fed. Appx. 639, 641 (9th Cir. 2009).

DEFENDANT PROVIDENCE'S MOTION TO DISMISS - 8
Case No. 2:22-cv-00159-TOR

Heart's power to rectify.  Nor have plaintiffs alleged any specific actions by Sacred Heart that would be sufficient to state a claim under any of their causes of action, regardless of the existence of an employment relationship.  Plaintiffs' lawsuit clearly arises out of their relationship with Mediatrix and Pediatrix, not Sacred Heart.  The Court should dismiss all claims against Sacred Heart with prejudice.

### A.    Sacred Heart was not Plaintiffs' employer for purposes of their common law wrongful discharge claim.

In order to pursue a wrongful discharge in violation of public policy claim, plaintiff must allege an employment relationship existed between the plaintiff and defendant.  *Awana v. Port of Seattle*, 121 Wn. App. 429, 433, 89 P.3d 291, 292 (2004) ("An action for wrongful discharge depends, by definition, upon termination of employment."); *see also* § 24:12. Discharge in violation of public policy—Overview, 16A WASH. PRAC., TORT LAW AND PRACTICE § 24:13 (5th ed.) ("[O]ne must have actually been an employee of the defendant in order to pursue a wrongful discharge claim.").  To determine the common law employer, courts will examine "who controlled the work to be performed;" "who paid the consideration" for work; and "who treated [the employee as such] for tax purposes."  *Buhr v. Stewart Title of Spokane, LLC*, 176 Wn. App. 28, 37, 308 P.3d 712, 716 (2013).

It is clear from the Complaint that Pediatrix and Mednax, not Sacred Heart, were Plaintiffs' employers under the common law.  Mednax hired Plaintiffs and entered into a written agreement related to their services.  Mednax set Plaintiffs' salaries, paid them, managed their schedules, and oversaw their job performance.  Dr. Ilg, a Mednax employee and plaintiffs' direct supervisor, controlled their day-

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

to-day work, which presumably includes managing their performance. Sacred Heart has no relationship with plaintiffs as far as compensation or tax treatment. At common law, therefore, there can be no dispute that Sacred Heart was not plaintiffs' "employer," and thus plaintiffs' wrongful termination claim fails as a matter of law.

**B.    Sacred Heart was not Plaintiffs' employer under the expanded definition of employer under the WLAD.**

A WLAD claim also fails as a matter of law if no employment relationship exists. *DeWater v. State,* 130 Wn.2d 128, 138-140, 921 P.2d 1059, 1064-1065 (1996) (requiring employment relationship under the WLAD); *Owa v. Fred Meyer Stores,* No. 2:16-CV-01236-RAJ, 2017 WL 897808, at *3 (W.D. Wash. Mar. 7, 2017) (where there is no employer-employee relationship and no contractual relationship between the plaintiff and the defendants, plaintiff's WLAD discrimination claim must fail). The WLAD expands the definition of "employer" to include "any person acting in the interest of an employer." RCW 49.60.040(10). A corporation that is affiliated with an employer may be an employer as well if it "acts in the interest of an employee's common law employer, directly or indirectly, in matters related to employment," in which case it can "be liable for ***its own discriminatory acts***." *Buhr*, 176 Wn. App. at 37 (emphases added). Despite the expanded definition of employer under the WLAD, it is evident from the Complaint that Sacred Heart is not plaintiffs' employer.

In *Buhr*, a plaintiff sued her former employer, Stewart Spokane, and its 51% shareholder, Stewart Co., for discrimination under the WLAD. *Buhr*, 176 Wn. App. at 37. Stewart Spokane's President stated that he independently—without

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    involvement from Stewart Co.—interviewed, hired, and discharged plaintiff, and

2    that he alone provided plaintiff's compensation and benefits, carried workers'

3    compensation insurance for plaintiffs' benefit, and paid plaintiff's employment

4    taxes.  *Id.* at 37.  In contrast, Stewart Co. had no control over the daily operations of

5    Stewart Spokane or over the plaintiff.  *Id.*  The two entities maintained their own

6    responsibility for liabilities and assets, maintained their own bank accounts,

7    managed their own revenues and operating expenses, funded their own payroll and

8    benefits plans, and filed independent tax returns.  *Id.*  The Court determined that

9    there was no genuine issue of material fact on the "essential employment element"

10   and granted summary judgment in favor of the defendant.  *Id.*

11        Here, plaintiffs were employed by Pediatrix and Mednax, and not by Sacred

12   Heart.  Their claims under the WLAD should therefore be dismissed.  *See also*

13   *Reigel v. Kaiser Found. Health Plan, Inc.,* 859 F. Supp. 963, 966 (E.D.N.C. 1994)

14   (granting summary judgment where physician plaintiff worked for a medical group,

15   and not the defendant health plan; plaintiff's employment agreement was with

16   medical group, and medical group and the health plan were "separate and distinct

17   entities, related only by virtue of a common goal of providing quality health care

18   services and a contractual agreement to work together toward this common goal.").

19        **C.    Sacred Heart was not a joint employer with Pediatrix under the**
20             **facts as alleged.**

21        Washington courts have not yet directly considered whether a plaintiff can

22   use a "joint liability" theory to impose liability on a non-employer entity under the

23   WLAD or in the context of wrongful termination claim.  Analogous case law under

DEFENDANT PROVIDENCE'S MOTION TO DISMISS - 11
Case No. 2:22-cv-00159-TOR

1  Title VII demonstrates, however, that plaintiffs' allegations are insufficient to

2  demonstrate such a relationship in this case.  *Anfinson v. FedEx Ground Package*

3  *Sys., Inc.,* 159 Wn. App. 35, 50, 244 P.3d 32, 39 (2010) (in the absence of clear

4  precedent, Washington courts look to decisions interpreting comparable federal

5  statutes as persuasive authority).

6      The Ninth Circuit has held that joint employers can be held liable under Title

7  VII of the Civil Rights Act in appropriate circumstances. *U.S. Equal Emp't*

8  *Opportunity Comm'n v. Glob. Horizons, Inc.,* 915 F.3d 631, 638 (9th Cir. 2019).

9  In determining whether a joint employment relationship exists, "the principal

10  guidepost is the element of control– that is, 'the extent of control that one may

11  exercise over the details of the work of the other.'" *Id.* at 638.  "Whether an

12  individual is an employee under Title VII is a question of law, assuming the

13  material facts are undisputed."  *Henry v. Adventist Health Castle Med. Ctr.*, 970

14  F.3d 1126, 1130 (9th Cir. 2020).

15      It is clear from the face of the Complaint that Sacred Heart was not a joint

16  employer in this case.  Plaintiffs allege numerous times that Mednax, Pediatrix, and

17  Dr. Ilg controlled their work, including their day-to-day work environment and the

18  terms and conditions of their employment.  *See* Complaint at ¶¶ 2.4 (Mednax

19  exerted control over the day-to-day work of the physicians); 2.5 ("'[C]ontrolling

20  physicians' medical decisions' is a key component in [Mednax's] profitability");

21  2.6 (Mednax controls Pediatrix and "retains the power to hire and fire Pediatrix

22  employees, control their schedules, determine their compensation, and formulate

23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    physician agreements."); 2.18 ("Mednax Medical Director Dr. Ronald Ilg controlled

2    all three physicians' employment and their day-to-day work."). With regard to

3    Sacred Heart, plaintiffs assert that it

> determined whether Mednax physicians could receive and maintain
> privileges (membership on their hospital medical staff); decided which
> physician(s) would serve as NICU Medical Director; provided the
> nurses, technology, equipment, and other staffing critical to the Mednax
> physicians' ability to treat and bill for treatment of patients at
> Providence; and controlled many aspects of the workplace, including
> which persons could be on premises while Mednax physicians were
> working.

Complaint at ¶2.10.

Courts that have addressed the issue have found that arrangements similar to

the relationship between plaintiffs and Sacred Heart do not give rise to a joint

employer relationship.  One such case is *Henry v. Adventist Health Castle Med.*

*Ctr.*, 970 F.3d 1126, 1129 (9th Cir. 2020), *cert. denied sub nom. Henry v. Castle*

*Med. Ctr.*, 142 S. Ct. 67, 211 L. Ed. 2d 9 (2021)  In that case, the Ninth Circuit

found no employment relationship when the medical center defendant decided

which surgical assistants would support the physician plaintiff, supervised the

assistants' performance and pay, and determined which medical record system

would be used for care provided at the facility.  The medical center also required the

physician to comply with its "Code of Conduct," "Corporate Compliance Program,"

and other regulations and bylaws.  In rejecting the plaintiff's arguments, the court

reasoned,

> [I]n the physician-hospital context, "[t]he level of skill required, location
> of the work, and source of equipment and staff are not indicative of
> employee status because all hospital medical staff are skilled and must

DEFENDANT PROVIDENCE'S MOTION TO DISMISS - 13
Case No. 2:22-cv-00159-TOR

work inside the hospital using its equipment." *Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 763 (8th Cir. 2014). . . . "[w]hen a physician shows up to work in today's world—either as an independent contractor or a full-fledged employee—he no longer is likely to carry all relevant medical instruments in a black satchel." *Tsosie v. United States*, 452 F.3d 1161, 1164 (10th Cir. 2006). "Instead, it is expected that he will make full use of the hospital's physical facilities during the course of his service." *Id.* It is also no surprise that Castle subjected Henry to regulations, as hospitals are responsible for maintaining a certain standard of care and safety for their patients.

*Id.* at 1131-32.

*Henry* and the cases it cites are not outliers in finding that a hospital must do significantly more than provide equipment, facilities, staff, and professional standards to a physician for there to be an employment relationship between them. *See, e.g.*, *Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, No. SA-18-CV-404-XR, 2020 WL 1248263, at *14 (W.D. Tex. Mar. 16, 2020), *aff'd sub nom. Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 563, 211 L. Ed. 2d 351 (2021) (hospital did not jointly employ physician where physician was employee of medical group with which hospital contracted to staff its Pediatric Intensive Care Department; "[N]umerous courts have held that physicians with staff privileges at hospitals are not employees despite the hospital's exercise of some control to maintain standards of patient care and record keeping." ); *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 262 (4th Cir. 1997) (physician employed by medical group with which hospital contracted to staff emergency department was not an employee of hospital; physicians' use of facility and equipment was "inherent in the provision of emergency medical services" and did not signal employee status); *Rhodes v. Sutter*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Health*, 949 F. Supp. 2d 997, 1004 (E.D. Cal. 2013) (under state law, healthcare facility that owned location where plaintiff physician worked had no joint employment relationship with medical group that employed her when facility had no authority to discipline, promote, transfer, or terminate plaintiff).

The Complaint definitively demonstrates that Sacred Heart's only connection to plaintiffs was its medical staff privileging process and ancillary support of plaintiffs' work as physicians. Plaintiffs cannot allege the requisite employment relationship with Sacred Heart as a matter of law, and the Court should dismiss plaintiffs' WLAD and wrongful discharge claims against it with prejudice.

**D.    Even if Plaintiffs could demonstrate an employment relationship, they do not state a WLAD claim against Sacred Heart.**

Plaintiffs cannot allege sufficient facts to show they had any kind of employment relationship with Sacred Heart.  Even if they could, however, their claims are still facially insufficient under the WLAD because they allege no affirmative discriminatory or retaliatory acts by any Sacred Heart employee.

For their claims of gender discrimination, Plaintiffs Kane and Lang must show (1) membership in a protected class; (2) that they were similarly situated to members of the opposite sex; and that (3) because of their sex, Sacred Heart treated them differently than members of the opposite sex.  *Specialty Asphalt & Constr., LLC v. Lincoln Cnty.*, 191 Wn. 2d 182, 192, 421 P.3d 925, 932 (2018).  Reviewing the allegations of the Complaint, plaintiffs have failed to state a claim of gender discrimination against Sacred Heart.  Plaintiffs contend they endured discrimination in working conditions that were entirely within the control of the other defendants

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  —specifically, they complain about "inequitable distribution of shifts, extreme

2  working hours, and gender-based pay disparity."  Complaint at ¶2.22.  They also

3  allege that Dr. Ilg, a Pediatrix employee, made gender-based comments.

4  Significantly, plaintiffs do not allege gender disparities or discrimination related to

5  *any* aspect of their work over which they allege Sacred Heart had control.  *See id.* at

6  ¶2.19 (stating Sacred Heart controlled whether physicians could hold privileges,

7  provided the staffing and equipment necessary to perform their work, and controlled

8  who could be on premises at the hospital).

9       To state a claim for retaliation against Sacred Heart under the WLAD,

10  plaintiffs must allege that (1) they engaged in statutorily protected activity, (2)

11  Sacred Heart took an adverse employment action against them, and (3) there is a

12  causal link between the plaintiffs' protected activity and an adverse action taken by

13  Sacred Heart.  *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 861–62, 991

14  P.2d 1182, 1191 (2000).  As with their discrimination claim, the allegations

15  underlying plaintiffs' retaliation claim again have no connection to Sacred Heart.

16  Plaintiffs contend that Dr. Ilg—someone who did not work for Sacred Heart and

17  over whom Sacred Heart did not exercise control—was at dismissive and then

18  hostile towards them on account of their complaints.  They allege that Dr. Ilg made

19  threatening statements, and that Mednax expressed support for Dr. Ilg at a meeting.

20  Plaintiffs do not attribute any retaliatory conduct whatsoever to Sacred Heart.  Nor

21  do they allege that anyone at Sacred Heart harbored a retaliatory motive against

22  them.  The only specific allegation plaintiffs make regarding Sacred Heart's

23

DEFENDANT PROVIDENCE'S MOTION TO DISMISS - 16
Case No. 2:22-cv-00159-TOR

1  response to their alleged complaints is their allegation that Dr. Barsotti advised

2  them to stop including him on their emails relaying concerns.  Complaint at ¶2.35.

3  Far from demonstrating intent to retaliate, this allegation only underscores the fact

4  that Sacred Heart had no connection to or control over the issues plaintiffs raised.

5      Sacred Heart did not employ plaintiffs, under any applicable test.  Even if it

6  did, however, viewing the allegations that pertain to Sacred Heart and not to

7  Mednax or its agent Dr. Ilg, plaintiffs have completely failed to allege facts

8  sufficient to support a claim against Sacred Heart under the WLAD.

9
10
   **E.    Plaintiffs' Negligence and Negligent Infliction of Emotional
           Distress claims against Sacred Heart should be dismissed.**

11      To prove their claims of Negligence and Negligent Infliction of Emotional

12  Distress against Sacred Heart, plaintiffs must first allege facts sufficient to find

13  duty, breach, causation and harm.  *Hunsley v. Giard,* 87 Wash.2d 424, 433, 553

14  P.2d 1096 (1976) ("Not every act which causes harm results in legal liability.").

15      As a general rule, there is no duty to prevent a third party from intentionally

16  harming another unless "a special relationship exists between the defendant and

17  either the third party or the foreseeable victim of the third party's conduct." *Niece*

18  *v. Elmview Grp. Home*, 131 Wn.2d 39, 43, 929 P.2d 420, 423 (1997) (citation

19  omitted).  As discussed above, Sacred Heart was not plaintiffs' employer.  The

20  Complaint identifies no other special relationship and therefore no duty on Sacred

21  Heart's behalf to protect them from the alleged actions of Dr. Ilg.

22      Moreover, even if plaintiffs did allege Sacred Heart owed them a duty of

23  care, none of their allegations against Sacred Heart rise to an alleged breach of that

DEFENDANT PROVIDENCE'S MOTION TO DISMISS - 17
Case No. 2:22-cv-00159-TOR

duty.  The closest plaintiffs come to alleging that they complained to Sacred Heart about something within its control is their claim that Sacred Heart failed to prevent Dr. Ilg from coming to the Hospital with a firearm, which they claim Sacred Heart could have forbidden by policy.  Even if true, however, this allegation is insufficient on the face of the Complaint because plaintiffs do not allege they experienced any harm as a result of Sacred Heart's alleged failure to enforce its policy as to Dr. Ilg—for example, they do not claim that Dr. Ilg did bring a firearm to work, that he showed them a firearm, or that he threatened them with a firearm.

Courts have recognized a cause of action for Negligent Infliction of Emotional Distress where, as here, a plaintiff claims emotional injury arising out of a condition in the workplace.  Even where an employment relationship exists, however, this claim faces an up-hill battle, as it is well-established that "employers have no duty to avoid infliction of emotional distress on employees when responding to employment disputes."  *Snyder v. Med. Serv. Corp. of E. Washington*, 145 Wn. 2d 233, 244, 35 P.3d 1158, 1164 (2001).  As the Washington Supreme Court explained in *Snyder*,

> The utility of permitting employers to handle workplace disputes outweighs the risk of harm to employees who may exhibit symptoms of emotional distress as a result. The employers, not the courts, are in the best position to determine whether such disputes should be resolved by employee counseling, discipline, transfers, terminations or no action at all. While such actions undoubtedly are stressful to impacted employees, the courts cannot guarantee a stress-free workplace.

*Id.* (citing *Bishop v. State*, 77 Wash. App. 228, 234, 889 P.2d 959, 963 (1995)).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    In this case, plaintiffs' allegations of specific conduct by Sacred Heart do not

2  come close to sufficient to meet the standard for a Negligent Infliction of Emotional

3  Distress claim.  Sacred Heart did not have a duty to protect plaintiffs from alleged

4  offensive conduct by their Medical Director, who was employed by a third-party,

5  and in any event the harm they allege they experienced falls into the category of

6  workplace stress that courts have found cannot give rise to a claim.  For these

7  reasons, the Court should dismiss plaintiffs' negligence-based claims against Sacred

8  Heart.

9                              **IV.    CONCLUSION**

10    For the foregoing reasons, Sacred Heart respectfully requests that the Court

11  dismiss all of plaintiffs' claims against it, with prejudice.

12

13    DATED this 1st day of August, 2022.

14                              Davis Wright Tremaine LLP
                                Attorneys for Defendant Providence Health
15                              & Services Washington

16

17                              By s/*Kathryn Rosen*
                                    Kathryn Rosen, WSBA No. 29465
18                                  920 Fifth Avenue, Suite 3300
                                    Seattle, WA  98104-1610
19                                  Phone: 206.757.8057
                                    kathrynrosen@dwt.com
20

21

22

23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

By s/*Paula Lehmann*

Paula Lehmann, WSBA No. 20678
929 108th Ave NE, Suite 1500
Bellevue, WA 98004
Phone: 425.646.6100
paulalehmann@dwt.com

DEFENDANT PROVIDENCE'S MOTION TO DISMISS - 20
Case No. 2:22-cv-00159-TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## PROOF OF SERVICE

I hereby certify that on the 1st day of August, 2022, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system which

will send electronic notification of such filing to the following:

Elizabeth Hanley
Rebecca Roe
Chen-Chen Jiang
Schroeter Goldmark and Bender
401 Union Street, Suite 3400
Seattle, WA 98101
206-622-8000

*Attorneys for Plaintiffs*

Catharine Morisset
Ryan R. Jones
FISHER PHILLIPS LLP
1700 7th Avenue, Suite 2200
Seattle, WA 98101
cmorisset@fisherphillips.com
rrjones@fisherphillips.com

*Attorneys for Mednax Services, Inc.*

/s/Lauree Anne Lingenbrink
Legal Assistant

MOTION TO DISMISS
Case No. 2:22-cv-00159-TOR
4892-1554-6667v.2 0016924-000827

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax