Honorable Thomas O. Rice

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREA KANE, M.D.; BROOK LANG, M.D.; and CHRISTOPHER RABIN, D.O.,<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDENCE HEALTH & SERVICES–WASHINGTON d/b/a PROVIDENCE SACRED HEART MEDICAL CENTER,<br><br>Defendant. | No. 2:22-cv-00159-TOR<br><br>AMENDED COMPLAINT FOR DAMAGES AND JURY DEMAND |

### I. PARTIES, JURISDICTION, AND VENUE

1.1    Plaintiff Brook Lang, M.D. is a female physician who resides in Spokane County, Washington.

1.2    Plaintiff Christopher Rabin, D.O. is a male physician who resides in Spokane County, Washington.

1.3    Plaintiff Andrea Kane, M.D. is a female physician who resides in Birmingham, Alabama.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 1

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

1.4     Defendant Providence Health & Services – Washington ("Providence") is a non-profit corporation with its principal place of business in Washington. It owns and operates Providence Sacred Heart Medical Center and Children's Hospital in Spokane County, Washington.

1.5     At all relevant times, Providence employed Drs. Lang, Kane, and Rabin ("Plaintiffs") and were employers under the Washington Law Against Discrimination, chapter 49.60 RCW ("WLAD").

1.6     This Court has supplemental jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1367.

1.7     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## II.    FACTS

### A.    Background

2.1     This case centers on three physicians' determination to provide safe and high quality patient care to vulnerable patients despite the barriers to patient care set up by a hospital, Providence, and a corporation, Mednax Services, Inc. and its regional subsidiary Pediatrix Medical Group of Washington, Inc., P.S. (collectively, "Mednax"). As laid out further below, Providence and Mednax disregarded their duties to provide Plaintiffs, three neonatologists, a workplace free from discrimination, retaliation, and threats to human health and safety. Instead, Providence and Mednax prioritized

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 2

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

profits and informed an unstable physician of Plaintiffs' complaints about discrimination and patient safety issues; did nothing when that physician threatened their lives and the safety of patients; and then even allowed the physician to open-carry a weapon, against hospital policy, on hospital grounds. As laid out further below, this resulted in Plaintiffs' being forced from their positions and sustaining injury.

2.2    Defendant Providence contracts with Mednax to obtain specialized physician services, specifically newborn, maternal-fetal, and other pediatric subspecialist care for its Neonatal Intensive Care Unit ("NICU").

2.3    Providence's contract with Mednax allows it to retain and staff a large NICU. Without Mednax physicians, Providence would not have a NICU, as Providence does not employ any neonatologists.

2.4    NICU's are typically the most profitable and prestigious departments in a hospital. Consistent with this national trend in healthcare, Providence's NICU is one of its most profitable departments in the hospital.

2.5    Defendant Providence maintains a close relationship with Mednax and Pediatrix, including supporting Mednax's stated corporate strategy and revenue growth.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 3

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

2.6     In return for entering into contracts for physician services which met Mednax's desired profitability margins, between 2017 and 2020, during Defendant Mednax physician Ron Ilg's facilitating the relationship between the two corporations, Providence obtained very favorable terms ensuring its profitability in those contracts with Mednax.

2.7     The relationship between the two is critical for both to profit. Mednax encourages non-profit hospitals to hire Mednax physicians for executive positions, which creates another "opportunit[y] for increasing revenue" by expanding the hospitals' use of Mednax's for-profit management and physician services.

2.8     Providence was aligned with Mednax's revenue-growth strategies. Providence hired former Mednax/Pediatrix Medical Director Dr. Michael Barsotti to be Providence's Chief Medical Officer.

2.9     Even though Providence contracted to obtain Plaintiffs' physician services, Providence still had an independent responsibility under standards of administrative medicine and hospital administration, including those set by Centers of Medicare & Medicaid Services ("CMS") and the Joint Commission, to investigate and take action in response to allegations of misconduct occurring within its hospital, including those involving patient care, discrimination, harassment, and retaliation.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 4

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

2.10   As Chief Medical Officer, Dr. Barsotti (and Providence) exerted considerable control over the physicians that Mednax placed at Providence and their day-to-day work.

2.11   Providence set qualifications for which Mednax physicians could work at its hospital.

2.12   Providence additionally determined whether Mednax physicians could receive and maintain privileges (membership on their hospital medical staff). To do that, Providence had to monitor physician performance and ensure that physicians were delivering quality patient care.

2.13   On information and belief, Providence set goals and standards for Mednax doctors' performance, including goals relating to quality of care, financial performance, and productivity.

2.14   On information and belief, Providence reviewed the physicians' performance towards these goals, and payment for these doctors' services depended in part on whether these goals were attained.

2.15   On information and belief, Providence had formal channels that physicians used to report patient care issues. Providence would then investigate and take disciplinary action if necessary against Mednax physicians, including reporting a Mednax physician to the medical board.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 5

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

2.16 Providence selected and had approval power over which physician(s) would serve as its NICU Medical Director. That NICU Medical Director worked regularly with Providence staff, including Dr. Barsotti, to ensure that Mednax physicians at Providence met governing standards and policies set by Providence.

2.17 On information and belief, the NICU Medical Director submitted time to Providence, and Providence paid the NICU Medical Director for these services.

2.18 Providence provided the nurses and other staffing critical to the Mednax physicians' ability to treat and bill for treatment of patients at Providence.

2.19 Providence provided the equipment, technology, supplies, and other tools critical to the Mednax physicians' ability to treat and bill for treatment of patients at Providence.

2.20 Providence provided and controlled the workplace, including which persons could be on premises while Mednax physicians were working and what patients Mednax physicians were treating.

2.21 On information and belief, Mednax physicians could not use Providence facilities for their own private practice of medicine.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 6

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

2.22    Providence retained this control because Mednax physicians were an integral part of Providence's business. Nurses and other Providence employees could not, by law, enter medical orders for patients, and the care provided by the physicians was so specialized that but for Mednax's contract(s) with Providence, Providence would not be able to adequately treat certain infants and expectant mothers.

2.23    When Providence employee Dr. Barsotti left Mednax to assume his position at Providence, he retained considerable influence over Mednax operations. He lobbied Mednax to promote his close personal friend, Dr. Ronald Ilg, to Pediatrix Medical Director. Mednax promoted Dr. Ilg to Medical Director of Pediatrix.

**B.    Plaintiffs' Relationship with Defendant**

2.24    In 2014, Mednax hired female physician, Dr. Lang, to treat patients at Spokane-area facilities in the areas of neonatology and pediatrics. Dr. Lang is Board Certified in pediatrics and neonatology-perinatology medicine.

2.25    In 2016, Mednax hired male physician, Dr. Rabin, to perform the same work. He is Board Certified in pediatrics and neonatology-perinatal medicine.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 7

SCHROETER, GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

2.26  In 2018, Mednax hired female physician, Dr. Kane. She is Board Certified in pediatrics and neonatal-perinatal medicine.

2.27  During much of Plaintiffs' employment, Drs. Lang, Rabin, and Kane worked at Providence in the NICU.

C.  **Sexism in the Workplace**

2.28  Defendant fostered a work environment permeated with sexism, in which a double-standard existed for female physicians when compared to their male counterparts. Females, including Dr. Lang, were also subjected to sexual harassment.

2.29  Throughout their employment, Drs. Kane and Lang raised concerns about inequitable distribution of shifts, extreme working hours, and gender-based pay disparity.

2.30  In response to Dr. Lang's concerns at one point she had worked six weeks straight without a day off, Dr. Ilg asked, "Do you have a picture of your daughter?" When Dr. Lang responded affirmatively, he said, "You should bring it to work, because you're going to work so much, you'll forget what she even looks like."

2.31  Dr. Rabin, a male, raised similar concerns on behalf of the female employees.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 8

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

2.32 Under standards of administrative medicine and hospital administration, Providence and Dr. Barsotti had a duty to report and investigate these complaints of discrimination and harassment through the appropriate medical staff process.

2.33 Instead, Providence and Dr. Barsotti ignored the concerns.

2.34 Dr. Ilg told female physicians, including Dr. Lang, to drop the issue and to stop "behaving like little girls." He stated that a woman cannot be both a mother and a doctor.

**D.    Plaintiffs Raise Concerns Regarding Patient Safety**

2.35 In 2019 and through the end of their employment, Plaintiffs and others at Providence raised concerns to Defendant that Dr. Ilg's care of patients jeopardized patient safety.

2.36 Dr. Ilg was not responding to call or accurately documenting patient care. He did not always report to the hospital to treat patients he was assigned or scheduled to treat.

2.37 For example, Dr. Ilg failed to attend a twin delivery. One twin had hypoplastic left heart syndrome. He told nurses "they could handle it, " which is contrary to the standard of care.

2.38 Dr. Kane reported this to Defendant. Nothing was done in response.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 9

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

2.39   Plaintiffs and others in the group also raised concerns that Dr. Ilg took too many shifts working in hospitals in Missoula, Montana; Yakima, Washington; and Spokane, Washington, which overlapped with patient call or other patient needs. They identified that this resulted in compromised patient care.

2.40   Under standards of administrative medicine and hospital administration, Providence and Dr. Barsotti had a duty to report and investigate these complaints of patient safety and quality of care through the appropriate medical staff process.

2.41   Under additional standards of administrative medicine and hospital administration, as well as the framework of anti-kickback laws and public policies surrounding those laws, Providence also had a nondelegable duty to ensure that physicians providing care under the Mednax agreement were devoting all of their efforts to care of Providence's patients when on call or on staff and that it received the fair market value of contracted services. Providence and Dr. Barsotti breached their duty in this regard too, as they failed to ensure that Dr. Ilg actually performed the physician services for which Providence was being paid, failed to keep complaints of Plaintiffs confidential, to protect them from retaliation, or take action to ensure compliance with these critical laws and policies.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 10

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

2.42   Instead, Providence and Dr. Barsotti gave Dr. Ilg preferential treatment, allowing him to dictate terms even to the assigned Providence NICU Medical Director, Plaintiff Dr. Rabin, and in return, received preferential treatment in the contracting process with Mednax.

2.43   Defendant did nothing to effectively address the concerns Plaintiffs raised, compromising patient and Plaintiffs' safety.

E.     **Plaintiffs Raise Concerns Regarding Sex Discrimination**

2.44   Plaintiffs raised safety concerns, as well as issues of sexual harassment, gender discrimination, and retaliation to Defendant.

2.45   Although Providence had an independent duty to under generally accepted standards of administrative medicine to investigate, Providence did nothing. Instead, Providence Medical Director Dr. Barsotti told Plaintiffs to stop including him on emails raising concerns.

2.46   Providence additionally had the responsibility to monitor that Mednax was meeting the provisions of their contract, which on information and belief would have included a minimum level of quality care and prohibition against discrimination and harassment. Providence did not do so.

2.47   Providence took no effective remedial action to resolve the issues.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 11

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

2.48  Instead, Providence notified Dr. Ilg that Plaintiffs had raised concerns.

F.  **Defendant Retaliates Against Plaintiffs**

2.49  Although Defendant was not addressing the discrimination and safety issues, they were telling Dr. Ilg about Plaintiffs' complaints.

2.50  Dr. Ilg told Dr. Lang, "…the squeaky wheel gets fired."

2.51  He told Dr. Kane to stop raising concerns or it "would be a problem" for her and she would "no longer be a part of this group."

2.52  He told Dr. Rabin and other physicians that Dr. Rabin was a "disease in the group."

2.53  Dr. Ilg announced at Providence that "someone who threatens my livelihood is threatening my family and I will take any measure to stop them."

2.54  He bragged about carrying a firearm to work. He also brought materials relating to guns to work.

2.55  One Mednax physician heard Dr. Ilg say that he wore a pistol holstered at his ankle every day, including at work. When asked directly whether he brought the pistol to work, Dr. Ilg indicated that he had a firearm on him all the time.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 12

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

2.56  Plaintiffs and others raised concerns to Defendant about the retaliatory behavior and the danger that Dr. Ilg posed in carrying a weapon at work, particularly once he became aware of Plaintiffs' complaints, had made open threats, and became increasingly erratic.

2.57  Under standards of administrative medicine and hospital administration, Providence and Dr. Barsotti had a duty to report and investigate these complaints of workplace safety violations through the appropriate medical staff process.

2.58  Although Providence had a weapons policy, Providence did nothing to enforce its policy and prohibit Dr. Ilg from bringing firearms into the workplace.

2.59  On information and belief, Providence did not interview any Mednax physicians regarding these gun concerns in any ensuing investigation, even though these physicians worked with Dr. Ilg regularly.

2.60  Plaintiffs became so frightened about their own and patient safety that they attempted to locate other employment.

2.61  When Dr. Kane gave notice that she was resigning due to Defendants' treatment of her, Dr. Ilg further retaliated against her as well. He extubated an infant in the Providence NICU against the parents' wishes, just before Dr. Kane's shift began. He did not adequately document the basis

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 13

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

for extubating the infant, or his communications with the parents. When Dr. Kane arrived for her scheduled shift at the NICU, the infant's heart had just stopped beating. Dr. Ilg smiled and told Dr. Kane and the nurse, "Dr. Kane is now taking care of that patient." He then left Dr. Kane to inform the parents that their baby had died and to resolve the issues with deficient documentation regarding the death of the infant patient.

2.62   Although Defendant was aware of these issues, it allowed the retaliation to continue and worsen. In September 2019, she was forced to leave her position, which caused her economic damages, personal injury, and severe emotional distress with objective medical symptomatology.

2.63   In December 2019, Defendants also constructively discharged Dr. Lang, who feared for her safety, career, and for the safety of patients. She also suffered emotional distress and other personal injuries with objective medical symptoms, in addition to economic and general damages.

2.64   In 2020, Dr. Rabin concluded that he was not safe working for Defendant. He too was constructively discharged from his employment, and suffered severe emotional distress with objective medical symptomatology, personal injuries, and economic as well as non-economic damages.

2.65   Providence fired others, including a nurse manager, who raised issues with Dr. Ilg's sexual harassment of female employees, patient care

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 14

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

issues, and failure to comply with policies prohibiting weapons in the hospital.

2.66  Providence promoted Dr. Barsotti after Plaintiffs had been forced out of their jobs and the nurse manager had been fired.

2.67  After this, Dr. Ilg posted a bounty online, promising to pay if someone would break Dr. Lang's hands. In his post, Dr. Ilg included Dr. Lang's name, picture, and her home address, where she resides with her children. Dr. Ilg also placed money in an escrow account to pay the bounty.

2.68  In April 2021, Dr. Ilg was arrested and arraigned for attempted kidnapping. He pled guilty and was sentenced to eight years in federal prison. He remains in federal custody.

2.69  Only after this arrest became public, Dr. Barsotti texted Dr. Lang, "… for what it is worth I am truly sorry I failed you."

2.70  All three Plaintiffs' economic and noneconomic damages are continuing.

### III.  CLAIMS

3.1  Plaintiffs restate the above facts as though fully stated herein and incorporate it into each of the below causes of action.

**A.  First Cause Of Action: Discrimination In Violation Of The Washington Law Against Discrimination**

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 15

SCHROETER, GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

3.2     Defendant Providence subjected Plaintiffs Kane and Lang to discriminatory treatment on the basis of sex in connection with the terms and conditions of their employment in violation of RCW 49.60.030 and .180.

3.3     As a direct and proximate result, Plaintiffs Kane and Lang have suffered and continue to suffer loss of compensation and benefits, emotional distress, anxiety, humiliation and embarrassment, each in amounts to be proven at trial.

B.    **Second Cause Of Action:** **Retaliation In Violation Of The Washington Law Against Discrimination**

3.4     Plaintiffs opposed sex discrimination.

3.5     Defendant Providence violated RCW 49.60.210 when it retaliated against and took adverse actions against Plaintiffs Kane, Lang and Rabin for their opposition to practices forbidden by the Washington Law Against Discrimination.

3.6     As a direct and proximate result, Plaintiffs have suffered and continue to suffer loss of compensation and benefits, emotional distress, anxiety, humiliation and embarrassment, each in amounts to be proven at trial.

C.    **Third Cause Of Action:** **Negligent Infliction Of Emotional Distress**

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 16

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

3.7     Defendant Providence engaged in conduct, acts, and/or omissions against Plaintiffs Kane, Lang, and Rabin that constitute negligent infliction of emotional distress.

3.8     As a direct and proximate result, Plaintiffs have been injured and damaged in an amount to be proven at trial, for which they are entitled to recover all damages sustained, including but not limited to past and future damages, actual and compensatory damages, economic and non-economic damages, and special and general damages.

**D.     Fourth Cause Of Action: Negligence**

3.9     Providence engaged in conduct, acts, and/or omissions against Plaintiffs Kane, Lang, and Rabin that constitute negligence, including that it breached its duty to provide a safe workplace for Plaintiffs.

3.10    Providence failed to exercise ordinary care to avoid injury to Plaintiffs.

3.11    As a direct and proximate result of Providence's breach of its duties to Plaintiffs, Plaintiffs have been injured and damaged in an amount to be proven at trial, for which they are entitled to recover all damages sustained, including but not limited to past and future, actual and compensatory, economic and non-economic, and special and general damages.

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 17

SCHROETER, GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

E.  **Fifth Cause Of Action**: Wrongful Discharge In Violation Of Public Policy

3.12  Plaintiffs opposed practices which compromised human health and safety.

3.13  In response, Defendant Providence deliberately created intolerable working conditions and constructively terminated Plaintiffs Kane, Lang, and Rabin, causing them damages.

3.14  As a direct and proximate result, Plaintiffs have suffered and continue to suffer loss of compensation and benefits, emotional distress, anxiety, humiliation, and embarrassment, each in amounts to be proven at trial.

## IV.  PRAYER FOR RELIEF

Plaintiffs pray for judgment and relief against Defendant as follows:

A.  Damages for lost compensation and benefits in amounts to be proved at trial;

B.  Damages for emotional distress, anxiety, humiliation, and embarrassment in amounts to be proved at trial;

C.  Liquidated damages;

D.  Pre-judgment interest;

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 18

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

E.  Increased payment to offset any additional income taxes triggered by judgment in Plaintiffs' favor;

F.  Attorneys' fees and costs;

G.  Such other and further relief as this Court deems just and proper.

DATED this 8th day of March, 2024.

                SCHROETER, GOLDMARK & BENDER

*s/Elizabeth A. Hanley*
ELIZABETH HANLEY, WSBA #38233
HONG (CHEN-CHEN) JIANG, WSBA #51914

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 19

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

# CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel For:* Providence Health & Services - Washington
Paula L. Lehmann
Grace Thompson
Kathryn S. Rosen
Victoria Slade
Davis Wright Tremaine LLP
929 108th Avenue NE, Suite 1500
Bellevue, WA  98004
paulalehmann@dwt.com
KatieRosen@dwt.com
gracethompson@dwt.com
vickyslade@dwt.com

*Counsel For:* Mednax Services, Inc. and Pediatrix Medical Group of Washington, Inc.
Catharine Morisset
Ryan Jones
Fisher & Phillips LLP
1700 7th Avenue, Suite 2200
Seattle, WA 98101
cmorisset@fisherphillips.com
rrjones@fisherphillips.com

DATED:    March 8, 2024, at Bremerton, Washington.

SCHROETER GOLDMARK & BENDER

_____
Aleena Hodges, Paralegal

AM. COMPLAINT FOR DAMAGES AND JURY DEMAND - 20

SCHROETER, GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA  98101
Phone (206) 622-8000 • Fax (206) 682-2305