ARNOLD & PORTER KAYE SCHOLER LLP Hon. Thomas O. Rice
Benjamin Moore, WSBA #55526
Rosemary Alito, *pro hac vice*
1601 5th Avenue, Suite 900
Seattle, WA 98101
T: +1 206 288 0103

Attorneys for Defendant
Providence Health & Services - Washington

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

| | |
|---|---|
| Andrea Kane, M.D.; Brook Lang, M.D.; and Christopher Rabin, D.O., <br><br> Plaintiff, <br><br> v. <br><br> Providence Health & Services-Washington d/b/a Providence Sacred Heart Medical Center, <br><br> Defendant. | No. 2:22-cv-00159 <br><br> DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT |

DEFENDANT'S STATEMENT OF MATERIAL FACTS
No. 2:22-cv-00159

**Arnold & Porter**
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

Pursuant to Local Civil Rule 56(c)(1), Defendant Providence Health & Services-Washington provides the following Statement of Material Facts Not In Dispute in support of its Motion for Summary Judgment, concurrently filed.

**A.     Sacred Heart Medical Center**

1.     Providence Sacred Heart Medical Center has served the Spokane community since 1887. Boasting a capacity of over 644 beds, Sacred Heart is one of the Northwest's largest hospitals. *See Sacred Heart Medical Center: About Us*, PROVIDENCE, https://www.providence.org/locations/wa/sacred-heart-medical-center/about-us.

2.     Along with a variety of other services, Sacred Heart also operates a Children's Hospital. Dr. Michael Barsotti, a board-certified neonatologist, serves as the Chief Administrative Officer of the Children's Hospital. CR 30(b)(6) Deposition of Michael Barsotti, MD ("30(b)(6) Barsotti Dep.") 6:18-21, 16:16-21.[1]

3.     Sacred Heart Children's Hospital is home to the Spokane region's Level 4 Neonatal Intensive Care Unit ("NICU"). 30(b)(6) Barsotti Dep. 17:16-18:1.

4.     Providence contracts with Pediatrix Medical Group of Washington ("Pediatrix") to provide the specialized physician services necessary to care for patients in Sacred Heart's NICU. 30(b)(6) Barsotti Dep. 21:2-10; Alito Decl., Ex. B.

5.     Plaintiffs, as well as Dr. Ilg, provided services in the Sacred Heart NICU under Providence's agreement with Pediatrix. 30(b)(6) Barsotti Dep. 23:7-26:4.

**B.     Plaintiffs' Employment with Pediatrix Medical Group of Washington**

6.     Dr. Lang joined Pediatrix in 2014, and Dr. Rabin joined Pediatrix in 2016. Alito Decl., Exs. C, D.

7.     At the time Plaintiffs joined Pediatrix, Ronald Ilg, M.D., served as

---

[1] Cited portions of the CR 30(b)(6) Deposition of Michael Barsotti, M.D., are attached to the Declaration of Rosemary Alito ("Alito Decl."), filed herewith, as Exhibit A.

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 1
No. 2:22-cv-00159

Arnold & Porter
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

Pediatrix's corporate medical director. July 23, 2025, Deposition of Christopher Rabin, D.O., ("Rabin Dep.") Dep. 8:3-11; *see also* May 13, 2025, Deposition of Michael Barsotti ("Barsotti Dep.") 27:8-21.[2] As corporate medical director, Dr. Ilg was responsible for Pediatrix's day-to-day operations while also providing medical services at the healthcare facilities serviced by the group. *See* Alito Decl., Ex. C at III.B; *id.*, Ex. D at III.B.

    8.    Plaintiffs' Employment Agreements with Pediatrix State:

- "The duties of Employee under this Agreement shall include the application by Employee of Employee's particular skill and knowledge in medicine and in the Specialty principally in such facilities, in the Spokane, Washington Metropolitan Area, or in such other clinics, offices or other healthcare facilities that Employer and Employee may mutually agree best serve the interest of Employer, and such duties shall be performed in accordance with such rules and regulations as may be from time to time prescribed by Employer. Employee will devote Employee's best efforts to promote the goodwill of Employer and all personnel employed by or contracted with Employer." Alito Decl., Ex. C at III.A; *id.*, Ex. D at III.A.
- "Employee shall devote Employee's full and exclusive time and attention to the business of Employer and to such work as may be assigned to Employee from time to time during the term of this Agreement. Employee will perform Employee's duties hereunder on such days and hours and at such times as shall be consistent with the schedules to be submitted to Employee by Employer's designated Medical Director for the Practice or his or her designee (the 'Medical Director') and/or designated regional officer having authority over the Practice (the 'Regional Officer'). Employee acknowledges that such schedules may require Employee's services at night, during weekends and holidays. Employee together with other professionals providing medical services under the direction of the Medical Director shall be referred to as the 'Practice.'" Alito Decl., Ex. C at III.B; *id.*, Ex. D at III.B.
- "As an inducement to Employer to enter into this Agreement, Employee hereby

---

[2] Cited portions of the July 23, 2025, Deposition of Christopher Rabin, D.O., are attached to the Alito Declaration as Exhibit E. Cited portions of the May 13, 2025, Deposition of Michael Barsotti are attached to the Alito Declaration as Exhibit F.

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 2
No. 2:22-cv-00159

Arnold & Porter
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

represents, warrants and covenants as follows: … Employee will become and remain a member in good standing of the medical staff, with appropriate privileges in the Specialty, at any hospital and/or healthcare facility reasonably designated by the Medical Director or Regional Officer from time to time (individually or collectively the 'Facility') and comply with all terms and conditions of any agreement between Facility and Employer under which Employee provides services. … Employee shall be subject to and comply with all of Employer's policies and procedures, which includes its Code of Conduct and its Employee Handbook." Alito Decl., Ex. C at III.C.6, III.C.7; *id.*, Ex. D at III.C.6, III.C.7.

- "Employer shall have the exclusive right to establish a schedule of fees to be charged to patients and third party payors for the professional services rendered by Employee. Employee hereby agrees that all fees received or collected as a result of professional services rendered by Employee during the term hereof shall be the property of Employer. Employee hereby assigns to Employer any and all of Employee's right, title and interest in and to such fees." Alito Decl., Ex. C at III.E.3; *id.*, Ex. D at III.E.3.

- "Employee grants to Employer an irrevocable power of attorney to negotiate, enter into, amend or terminate managed care contracts in the name of Employee. Employee agrees to comply with the provisions of all third party payors contracts that Employer is bound by during the term of this Agreement, and to sign and deliver any such contracts or related documents to the extent directed by Employer." Alito Decl., Ex. C at III.F; *id.*, Ex. D at III.F.

- "For all services rendered by Employee pursuant to this Agreement and for Employee's compliance with the obligations described in this Agreement, and in addition to other monetary or fringe benefits referred to herein, Employee shall receive an annual base salary …." Alito Decl., Ex. C at V.A; *id.*, Ex. D at V.A.

- "It is expressly acknowledged by the parties hereto that Employee, in the performance of services hereunder, is a bona fide employee of Employer. Accordingly, Employer shall deduct from the compensation paid to Employee any sums for income tax, social security or other withholding as may be required by any law or other requirement of any government body." Alito Decl., Ex. C at V.F; *id.*, Ex. D at V.F.

- "This Agreement may be terminated immediately by Employer for 'Cause.' For purposes of this Agreement, the term 'Cause' shall mean: … Employee's failure or

**Arnold & Porter**
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

refusal to comply with Employer's workplace conduct policies relating to substance abuse, sexual harassment, other unlawful harassment, or work place discrimination (after taking into account notice and cure provisions contained in such policies if any)." Alito Decl., Ex. C at VIII.A.2(g); *id.*, Ex. D at VIII.A.2(g).

9. Throughout their employment with Pediatrix, Plaintiffs worked at a variety of facilities, including Sacred Heart Medical Center. February 6, 2024, Deposition of Brook Lang, M.D. ("Lang Arb. Dep"). 14:2-8; *see also* February 5, 2024, Deposition of Christopher Rabin, D.O ("Rabin Arb. Dep.") 115:22-117:9; Rabin Dep. 52:4-8.[3]

10. In 2017, Dr. Rabin entered into a supplemental agreement with Pediatrix to become the Pediatrix Medical Director of the Sacred Heart NICU. Alito Decl., Ex. I.

11. The Hospital NICU Medical Director Agreement between Dr. Rabin and Pediatrix states:

- "Pediatrix hereby appoints Physician, and Physician accepts appointment from Pediatrix, as Medical Director of the professionals that provide medical services within Sacred Heart Medical Center located in Spokane, Washington (the 'Hospital'). Physician agrees to devote Physician's time and efforts to the performance of the duties of Medical Director in an efficient, trustworthy and professional manner, and to undertake such duties as described in Addendum 1 and such other duties as may, from time to time, be reasonably assigned Physician by Pediatrix's Medical Director for the Spokane, Washington neonatology practice (the 'Practice Medical Director') or Pediatrix's Regional President (Mountain West Region) or his/her designee (collectively, the 'Regional President')." Alito Decl., Ex. I at § 1.
- "The Medical Director is responsible for the overall results achieved by Pediatrix

---

[3] Cited portions of the February 6, 2024, Deposition of Brook Lang, M.D., taken in the arbitration against Mednax and Pediatrix are attached to the Alito Declaration as Exhibit G. Cited portions of the February 5, 2024, Deposition of Christopher Rabin, D.O., taken in the arbitration against Mednax and Pediatrix are attached to the Alito Declaration as Exhibit H.

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 4
No. 2:22-cv-00159

Arnold & Porter
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

in terms of: … Manage disciplinary issues- Physicians who are not practicing in a manner consistent with accepted standards of care need to be counseled, provided opportunities to improve, and when necessary, disciplined. Conflicts between individuals physicians or medical departments also fall under the purview of the Medical Director." Alito Decl., Ex. I add. 1.

### C. Expectations for Members of Sacred Heart's Medical Staff

12. The Bylaws of the Unified Medical Staff of Providence Holy Family Hospital and Providence Sacred Heart Medical Staff Center state:

- "The unified 'Medical Staff' of Providence Holy Family Hospital and Sacred Heart Medical Center means the medical physicians, osteopathic physicians, licensed oral and maxillofacial surgeons, dentists, podiatrists, nurse-midwives, and clinical psychologists, who receive privileges to practice at Providence Sacred Heart Medical Center." Alito Decl., Ex. J, Art. 1, § 11.
- "Health professionals are granted privileges specific to each Hospital and are hereby organized into a medical staff to assist the Board in executing the following functions as delegated by the Board to the medical staff. … To ensure all patients treated in Providence Holy Family Hospital and Providence Sacred Heart Medical Center are provided with quality health care in a safe environment. … To evaluate and monitor the behavior and clinical practice of medical and allied health professional staff members in order to promote and maintain safe, quality health care." Alito Decl., Ex. J at Art. II, § 1.
- "Credentialed staff agree to follow the Providence Code of Conduct as well as the PHC Medical and Allied Health Professional Staff Code of Conduct." Alito Decl., Ex. J at Art. III, § 2.1.
- "Appendix A, the Fair Hearing Plan, is consistent among the four PHC hospitals. It is appended to these bylaws and covers the following components:
Initial Review
Investigations
Summary Suspension of Clinical Privileges
Action by Third Parties
Hearing Procedure
Appeal
Board Action." Alito Decl., Ex. J at Art. VI.

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 5
No. 2:22-cv-00159

**Arnold & Porter**
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

- "**Collegial Intervention.** When a concern is raised regarding (a) the clinical competence or clinical practice of a member of the medical staff, or (b) compliance by a member of the medical staff with applicable ethical standards, the bylaws, rules or regulations of the medical staff, or policies of the hospital or the medical staff, medical staff and hospital leaders are encouraged to use collegial intervention. The goal of collegial intervention is cooperation by the medical staff member to resolve the matter. Collegial intervention is encouraged but is not required. Its use is within the discretion of medical staff and hospital leaders. Collegial efforts may include, but are not limited to, counseling, sharing of comparative data, monitoring, and additional training or education." Alito Decl., Ex. J at App'x A, Art. I, § 1.01.

13. The Providence Code of Conduct states:

- "Providence is committed to maintaining a workplace free of discrimination, harassment, violence, bullying and other abusive conduct. … Our caregivers/employees should promptly report any incident of discrimination, harassment, workplace violence, bullying or other abusive conduct to his or her supervisor, human resources, local or regional compliance office or to the Providence Integrity Line." Alito Decl., Ex. K at 19.
- "The Providence Integrity Line and Integrity Online are answered by a third-party company, which sends all reports to a Providence compliance office for investigation." Alito Decl., Ex. K at 7.
- "Providence expects that integrity, compliance, or legal concerns will be reported promptly. Each Providence workforce member has a responsibility to report any activity that appears to violate laws, rules, regulations, standards, federal health care conditions of participation or this Code of Conduct." Alito Decl., Ex. K at 7.

14. The Medical and Allied Health Professional Staff Code of Conduct states:

- "Practitioners are expected to: … Not engage in behavior that is disruptive, sexually harassing, disrespectful, derogatory or inflammatory." Alito Decl., Ex. L at 1-2.
- "All members of the health care team, including practitioners, are expected to treat others with respect, courtesy and dignity and conduct themselves in a professional and cooperative manner. Safety and quality patient care depend on teamwork,

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 6
No. 2:22-cv-00159

**Arnold & Porter**
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

communication, and collaboration. Disruptive behavior undermines safety, can foster medical errors and preventable adverse outcomes and will not be tolerated. The protection of patients, hospital employees, practitioners and visitors, and the orderly operation of the hospital are paramount." Alito Decl., Ex. L at 3.

- "Disruptive behavior may include, but is not limited to: … Threatening, intimidating, or abusive language (e.g., belittling, berating, and/or threatening another individual); … Jokes or derogatory comments related to race, ethnicity, gender, sexuality, or religion." Alito Decl., Ex. L at 3.

- "Providence Sacred Heart Medical Center/ Holy Family Hospital encourages evaluation and management of conflicts, disagreements, and other differences of opinion through appropriate administrative channels. PSHMC/PHFH also encourages practitioners to report disruptive behavior to hospital and medical staff leadership for resolution. There will be no reprisal for reporting concerns to The Joint Commission or Department of Health." Alito Decl., Ex. L at 3.

15. All workforce members, including Plaintiffs, have access to Providence's incident reporting tools to report complaints of harassment or other disruptive behavior. CR 30(b)(6) Deposition of Shannon Klein ("Klein Dep.") 88:23-89:6.[4]

**D. Providence Responds to Complaints Regarding Dr. Ronald Ilg.**

16. During his deposition, Dr. Rabin testified that the first complaint he received from someone in the NICU about Dr. Ilg was "that they couldn't get in touch with him, that he wasn't answering his pages or his phone calls." *See* Rabin Dep. 85:13-86:5. He further testified that he received this complaint "Fall, summer, something like that, 2018," and that, in response, he "spoke with Dr. Ilg." *Id.*

17. In the summer of 2019, members of the nursing staff complained that Dr. Ilg was not responding promptly to their requests while on call. Klein Dep. 65:1-67:24. In response, Dr. Barsotti reported these concerns to Mednax and engaged in a collegial conversation with Dr. Ilg, indicating that staff had raised concerns about his

---

[4] Cited portions of the CR 30(b)(6) Deposition of Shannon Klein are attached to the Alito Declaration as Exhibit M.

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 7
No. 2:22-cv-00159

Arnold & Porter
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

availability and reminding him that he needed to be available to nursing staff. *Id.*; Barsotti Dep. 12:2-13:8.

18. Around this time, Dr. Barsotti also became aware that the Pediatrix providers in the NICU were "unhappy" with their work schedules and lack of work-life balance. 30(b)(6) Barsotti Dep. 66:21-68:2; August 23, 2023, Deposition of Michael Barsotti, M.D., ("Barsotti Arb. Dep.") 75:18-76:6.[5]

19. During his CR 30(b)(6) deposition, Dr. Barsotti recalled that Dr. Lang "was concerned that she was working as many shifts, if not more shifts, than Dr. Ilg" despite having moved to part-time status. 30(b)(6) Barsotti Dep. 67:18-68:2.

20. Dr. Barsotti also reported these general concerns to Mednax. *Id.* 67:1-8.

21. In August 2019, Dr. Barsotti reached out to Dr. Lang asking if she would be willing to share anonymous information regarding the group with him so he could elevate any concerns to Mednax leadership. Alito Decl., Ex. O at 1. Dr. Lang declined this invitation. *Id.*

22. During her deposition, Dr. Lang testified that she declined Dr. Barsotti's offer because she had already decided to resign and she "didn't think it was going to make any difference." August 7, 2025, Deposition of Brook Lang, M.D., ("Lang Dep.") 39:18-40:2.[6]

23. On September 18, 2019, Dr. Barsotti emailed members of Mednax leadership addressing his ongoing concerns with Dr. Ilg's conduct and noting that he was "truly worried about Ron." Alito Decl., Ex. Q.

24. On October 3, 2019, Dr. Barsotti emailed members of Mednax leadership

---

[5] Cited portions of the August 23, 2023, Deposition of Michael Barsotti, M.D, taken in Plaintiffs' arbitration against Mednax and Pediatrix, are attached to the Alito Declaration as Exhibit N.

[6] Cited portions of the August 7, 2025, Deposition of Brook Lang, M.D., are attached to the Alito Declaration as Exhibit P.

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 8
No. 2:22-cv-00159

Arnold & Porter
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

stating that he had spoken with Dr. Rabin that morning and "encouraged" him to share any concerns the group had with Mednax leadership. Alito Decl., Ex. R.

25. During his deposition, Dr. Rabin testified that Dr. Barsotti chaired a meeting in the fall of 2019 to address Dr. Ilg's behavior. Rabin Dep. 57:3-58:22.

26. During her deposition, Dr. Lang testified that Dr. Barsotti repeatedly "check[ed] in" with her in the summer of 2019 about Dr. Ilg and informed her that Providence was "working on it." Lang Dep. 25:14-26:9.

27. In mid-October 2019, Providence received a complaint that indicated that Dr. Ilg may have brought a weapon onto the Sacred Heart campus. *See* Alito Decl., Ex. S; 30(b)(6) Barsotti Dep. 103:6-112:4.

28. Dr. Barsotti immediately alerted Mednax about the complaint and began an investigation. 30(b)(6) Barsotti Dep. 103:10-104:9; Alito Decl., Ex. S.

29. Through that investigation, Dr. Barsotti determined that Dr. Ilg had not brought a weapon to the hospital and had not made any "overt threatening allegations about having a weapon," but instead had engaged in a heated discussion with the nurse manager, and the nurse manager had separately heard that Dr. Ilg mentioned having a concealed weapons permit during an off-site recruiting event with another physician. Klein Dep. 57:7-58:7; 30(b)(6) Barsotti Dep. 103:6-112:4.

30. While Dr. Barsotti's initial investigation alleviated Providence's immediate concern that Dr. Ilg may be bringing a weapon into the hospital, Providence remained concerned that "potentially [Dr. Ilg] was under some stress or some health issue that was impacting his ability to work well within [Sacred Heart's] system." Klein Dep. 55:10-59:8; *see also* 30(b)(6) Barsotti Dep. 130:15-131:9.

31. Therefore, Providence asked Dr. Ilg to self-refer to the Washington Physicians Health Program ("WPHP") for evaluation. Klein Dep. 55:10-59:8, 116:21-117:2; 30(b)(6) Barsotti Dep. 127:6-128:7; Alito Decl., Ex. S.

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 9
No. 2:22-cv-00159

Arnold & Porter
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

32. The Medical Staff's policy is to refer any provider whose practice it believes may be being impacted by a health condition to the WPHP for assessment. *See* Klein Dep. 56:1-17.

33. WPHP conducted a preliminary evaluation of Dr. Ilg and informed Providence that, while Dr. Ilg may benefit from ongoing mental health treatment, it believed Dr. Ilg could continue to safely practice medicine. *See* Klein Dep. 59:9-18; 30(b)(6) Barsotti Dep. 133:5-11; Alito Decl., Exs. S, T.

34. Dr. Ilg, however, did not return to practice at Sacred Heart following this referral, and, indeed, never returned to Sacred Heart before formally resigning from the Medical Staff in January 2021. *See* Klein Dep. 81:25-82:14; Rabin Dep. 32:24-33:9.

**E. Mednax Conducts Simultaneous Internal Investigation into Dr. Ilg's Leadership.**

35. In the Spring of 2019, Mednax received two anonymous complaints regarding Dr. Ilg. Lang Dep. 26:10-27:5; Rabin Dep. 20:7-21:5. One complaint alleged that Dr. Ilg had engaged in harassing conduct towards female members of the medical group. Alito Decl., Ex. T. The other complaint alleged concerns regarding Dr. Ilg's scheduling practices and control over physician pay. Lang Dep. 26:10-27:14; Rabin Dep. 20:7-21:5.

36. Mednax investigated and took remedial action in response to both complaints. Lang Dep. 27:15-18; Rabin Dep. 20:7-21:5, 78:7-18.

37. Mednax did not inform Dr. Barsotti about these investigations. 30(b)(6) Barsotti Dep. 128:17-25; Barsotti Arb. Dep. 79:20-80:7.

38. In June 2019, Pediatrix transferred scheduling responsibility from Dr. Ilg to Dr. Rabin and another Pediatrix Provider, Dr. Claudia Weinheimer. Rabin Dep. 78:7-15; Rabin Arb. Dep. 57:8-61:12.

39. Pediatrix removed Dr. Ilg from his role as corporate medical director in

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 10
No. 2:22-cv-00159

Arnold & Porter
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

the fall of 2019. Rabin Dep. 75:3-9, 78:16-18.

40. While both Plaintiffs Lang and Rabin were interviewed as part of these investigations, neither Plaintiff claims to have made the anonymous complaints to Mednax which led to the investigations. Lang Dep. 26:10-27:5; Lang Arb. Dep. 73:18-23; Rabin Arb. Dep. 41:9-42:22, 228:3-229:3.

### F. Plaintiffs Lang and Rabin Resign from their Employment with Pediatrix.

41. On September 6, 2019, Dr. Lang notified Mednax that she had accepted another position and was resigning from her position effective December 5, 2019. Alito Decl., Ex. U. She agreed, however, to remain employed an additional 26 days in exchange for receiving her "contractually agreed upon bonus … for the calendar year 2019." Alito Decl., Exs. U, V; Lang Dep: 36:23-38:3.

42. On December 17, 2019, Dr. Barsotti reached out to Dr. Lang and asked whether "there was anything [he] could do with Mednax to keep the door open for you to be involved at [Sacred Heart] (either now or in the future)?" Alito Decl., Ex. O at 2. Dr. Lang replied that she "would not be opposed to staying involved with ECMO" but that she did "not want to stay employed with Mednax at all." *Id.*

43. During her deposition, Dr. Lang also testified that, in September 2019, Mednax asked her whether she would stay if "they got rid of Dr. Ilg," but she said "no." Lang Dep. 48:4-10.

44. Dr. Lang's last day of employment with Pediatrix was December 31, 2019. Alito Decl., Ex. V.

45. Dr. Rabin notified Mednax of his intent to resign his position on August 19, 2020. His last day with Pediatrix was November 17, 2020. Alito Decl., Ex. W.

46. During his deposition, Dr. Rabin testified that he believed he was "in an unsafe work environment" from "the time [he] started working for Pediatrix at Sacred Heart until the time [he] left and resigned." Rabin Dep. 74:2-22. He also testified that

he submitted his resignation because he "knew that Dr. Ilg was coming back, and I was afraid of him, and I did not want to be there with Dr. Ilg." Rabin Dep 45:19-22. He admits, however, that, prior to submitting his resignation, he never asked anyone at Providence to intervene or otherwise prohibit Dr. Ilg from returning to Sacred Heart. Rabin Dep. 81:1-9.

### G. Prior to Submitting their Resignations to Pediatrix, Plaintiffs Made Few, If Any, Complaints to Providence About Dr. Ilg.

47. During his deposition, Dr. Rabin testified as follows: "Q. And you were aware that physicians such as yourself, as well as Providence employees, could use the hotline; right? A. Yes. Q. All right. You never made a complaint to the Providence integrity line, did you? A. No." Rabin Dep. 21:6-12.

48. Dr. Rabin recalled that he "maybe" spoke with Dr. Barsotti about his concerns regarding Dr. Ilg's scheduling practices in the spring of 2019, and that, while he can't remember what he discussed, he "believe[d]" he told Dr. Barsotti that the schedule was "bad and discriminatory." Rabin Dep. 68:1-69:2.

49. Other than this alleged conversation, the only affirmative effort Dr. Rabin engaged in to alert Providence of any concern was to carbon copy Dr. Barsotti on a June 28, 2019, email to Mednax leadership in which he accused Dr. Ilg of engaging in "scheduling antics" after Dr. Ilg reported that he could not work a scheduled shift because he threw out his back. Rabin Dep. 30:10-31:19.

50. During his deposition, Dr. Rabin also identified several complaints that were raised to him by Sacred Heart staff regarding Dr. Ilg's clinical care. Rabin Dep. 85:13-89:9. He did not, however, report any of these concerns to Dr. Barsotti or anyone else at Providence. *Id.*

51. Dr. Lang does not claim to have ever alerted Providence that Dr. Ilg was engaging in discriminatory conduct. Lang Dep. 44:14-20.

52. During her deposition, Dr. Lang testified that the first and only time she

Arnold & Porter
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

raised an issue regarding Dr. Ilg with Dr. Barsotti was in "passing" in late June or early July 2019. Lang Dep. 24:7-15; Lang Arb. Dep. 74:4-7. Specifically, Dr. Lang testified that she told Dr. Barsotti about an incident where Dr. Ilg allegedly informed her and another Pediatrix physician that "[a]nybody who threatens my livelihood … I take that as a direct threat on my family, and those people then I will cause harm to." Lang Dep. 24:16-25:13.

53. Dr. Lang has previously testified about this incident as follows:

- "It was midday. Dr. Dajnowicz was there as well. He came in angry. I am not even certain he was on that -- that day, like, meaning I'm not certain he was supposed to be on shift. He came in. He said he was so angry with us for threatening his livelihood, and he said, looking at me, Anyone who threatens my job, threatens my livelihood. If you threaten my livelihood, you threaten my family, and any attack on my family I will take seriously and will do whatever I have to stop it, including causing harm." Lang Arb. Dep. 72:7-18.

54. Dr. Lang has previously testified that after she told Dr. Barsotti about this incident he told her he would "look into" it. Lang Arb. Dep. 76:6-11.

55. When asked what inappropriate comments Dr. Ilg made to her, Dr. Lang testified as follows:

- Dr. Lang recalled Dr. Ilg advising her in 2014 to bring a picture of her daughter to work so she would "know what she looks like" after she complained about not having time to see her family because of her work schedule. Lang Dep. 31:16-32:18.
- Dr. Lang recalled Dr. Ilg telling her in 2015 that he wanted Dr. Lang's husband to attend a dinner to discuss Dr. Lang taking over as medical director at one of the hospitals Pediatrix staffed because Dr. Ilg "knew that we were a conservative family just like he was and that my husband actually had to make the decisions in our home" in 2015. Lang Dep. 34:19-35:21.
- Dr. Lang recalled Dr. Ilg calling her and another physician "bad little girls" for trying to change Pediatrix's scheduling system in the fall of 2016. Lang Dep. 32:20-33:18.
- Dr. Lang recalled Dr. Ilg laughing at something Dr. Lang said, putting his hand on

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 13
No. 2:22-cv-00159

Arnold & Porter
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

her leg, and saying "My wife just doesn't understand you and I." Lang Dep. 33:19-34:14.

57. Dr. Lang did not report any of the incidents to either Mednax or Providence. Lang Dep. 35:22-36:1.

### H. Procedural History

57. Plaintiffs have settled their claims against Pediatrix and Mednax. Rabin Dep. 6:22-7:14; Lang Dep. 9:2-10:11.

58. During discovery, Plaintiffs Lang and Rabin withdrew their claims for economic damages. Alito Decl., Exs. X, Y.

59. Plaintiff's counsel further represented that Plaintiff Lang was not alleging that she suffered from a diagnosable medical condition as a result of Providence's conduct. Alito Decl., Ex. Z. Similarly, Plaintiff Rabin testified that he had not sought medical treatment as a result of any alleged injury. Rabin Dep. 90:19-91:1.

DATED this 18th day of August, 2025.

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 14
No. 2:22-cv-00159

**Arnold & Porter**
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Rosemary Alito*
Rosemary Alito, *pro hac vice*
Rosemary.Alito@arnoldporter.com
One Gateway Center, Suite 1025
Newark, NJ 07012
T: +1 973 776 1927

By: */s/ Benjamin Moore*
Benjamin Moore, WSBA# 55526
Ben.Moore@arnoldporter.com
1601 5th Avenue, Suite 900
Seattle, WA 98101
T: +1 206 288 0103

Attorneys for Defendant
Providence Health & Services - Washington

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 15
No. 2:22-cv-00159

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August 2025, I caused the foregoing document to be filed with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all parties and counsel of record in this matter.

/s/ Benjamin Moore
Benjamin Moore, WSBA # 55526

DEFENDANT'S STATEMENT OF MATERIAL FACTS - 16
No. 2:22-cv-00159

**Arnold & Porter**
One Gateway Center, Suite 1025
Newark, NJ 07102-5315
Telephone: +1 973.776.1900